1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

<u>SENTENCING</u>

UNITED STATES OF AMERICA          :
                                  :
     Plaintiff                    :
                                  :
v.                                :          CRIMINAL NUMBER
                                  :          WN-90-0454
                                  :
MICHAEL STEVEN SMITH,             :
a/k/a Smitty                      :
                                  :
     Defendant.                   :
                          ...oOo...


                              Baltimore, Maryland
                              April 23, 1993


          The above—entitled case came on for <u>Sentencing</u>
     before the Honorable William Nickerson, at 2:30 p.m.


                    A P P E A R A N C E S


<u>FOR THE GOVERNMENT:</u>

     Barbara Skalla, Esquire
     Assitant United States Attorney

     John Geise, Esquire
     Assistant United States Attorney

<u>FOR THE DEFENDANT:</u>

     Gary L. Segal, Esquire
     (Court appointed)


<u>REPORTED BY:</u>

Linda R. Prince
Official Court Reporter

1    promoting that corroborative testimony.  They are merely

2    identical.  The relationships, the quantities and the

3    involvement of Mr. Smith is nearly perfectly corroborated by

4    all of those things.  The undercover wiretaps and the

5    independent witnessess who testified consistent with Mr.

6    Millett.

7            THE COURT:  Anything else, Mr. Segal?

8            MR. SEGAL:  No, Your Honor.

9            THE COURT:  We have of course, dealt with Mr.

10   Millett's credibility on more than one occasion in the past.

11   And I have determined in the past that he was a very credible

12   witness.  I don't know that I ever specifically indicated and

13   certainly don't mean to indicate that every word that flowed

14   from his mouth was clearly the gospel truth; and I think that

15   there is some merit in Mr. Segal's argument with respect to the

16   overall extent to which everything Mr. Millett said should be

17   deemed to be true, but it's absolutely inescapable to me that

18   Mr. Millett's testimony implicates Michael Smith, if not to the

19   full extent outlined in the Government's memorandum, at least

20   well beyond that point that is in contention, and that is to

21   say Mr. Smith's direct participation and involvement with

22   respect to 5 kilograms crack cocaine.  Even if I were to

23   conclude that Mr. Millett were doubling the amount and then

24   half of that was lost in the cooking process which is not my

25   conclusion, but still putting that together with the evidence

23

1    from Mr. Wallace, and Mr. Johnson, and Agent Bryant, which I

2    don't feel that there is any real question about, brings it

3    clearly over the 5 kilogram level.

4        I am in fact satisfied the government has proven by a

5    preponderance of the evidence that Mr. Millett's testimony

6    alone is that there is at a minimum 10 kilograms attributable

7    by reason of direct participation by Mr. Smith.

8        And in addition to that, we have Mr. Wallace with at least

9    half a kilogram, nine ounces for Tommy Johnson, at least a half

10   a kilogram from Agent Bryant.  It is simply inescapable, and I

11   find that the government has proven very clearly by a

12   preponderance of the evidence that even by clear and convincing

13   evidence more than 5 kilograms is attributable to Mr. Smith

14   which takes us to the level 40, is that it?

15           MS. SKALLA:  Yes, sir.

16           THE COURT:  There are still issues that remain.  And

17   the first one would appear to have to do with Mr. Smith's role

18   in the offense.

19       Miss Skalla, do you want to be heard on that?

20   °       MS. SKALLA:  Your Honor, the conclusion of the

21   probation department is that Mr. Smith is subject to a three

22   level enhancement for role, and the government is not asking

23   for that much of an enhancement.  However, we are asking for a

24   two level enhancement to reflect the increased role, the more

25   important role that Mr. Smith had in the activities, not only

24

1    in the counts of conviction but also all of the relevant

2    conduct.

3        It is fairly clear through the undercover activity, the

4    testimony of the witnesses and the wire intercepts that Mr.

5    Smith was supervising several people, and was organizing the

6    distribution of crack.  Not only was Johnny Millett used as a

7    worker who directly worked for and with Mr. Smith, but there

8    were others as well.  For example, Walter Ferguson made

9    deliveries.  Hassan Smith made deliveries.

10       In the wire intercepts we heard conversations where Michael

11   Smith was upset with Hassan Smith for not getting back to

12   customers like Paul Winestock, Jr. fast enough.  We also know

13   that Michael Smith was the direct link between Brian Benjamin,

14   the Trinidadian supplier of powder cocaine and crack cocaine

15   and many of the distributors of cocaine and crack in the

16   Woodridge area and those associated with the members of the

17   Woodridge neighborhood.

18       In those respects Your Honor, Mr. Smith is more responsible

19   than many of the others.  For example, Hassan Smith who was

20   sentenced at a level 40, appropriately he did not receive a

21   reduction for role, and his role was less than the role played

22   by Michael Smith.

23       For all of those reasons Your Honor, the government is

24   seeking a two level enhancement for Mr. Smith under the parole

25   provisions.

25

1          THE COURT:  Mr. Segal.

2          MR. SEGAL:  Your Honor, first of all Your Honor, Mr.

3    Smith's brother, Darrell Smith is here, and I plan on calling

4    him as a witness on this issue.  It might be appropriate to

5    have him come forward and give his -- it is very brief

6    testimony on this issue first, then I will make my argument.

7          THE COURT:  All right.

8    THEREUPON --

9                    DARRELL REGINALD SMITH

10   First being duly sworn testified as follows:

11         THE CLERK:  Please state your full name for the

12   record.

13         THE WITNESS:  Darrell Reginald Smith, S M I T H.

14                    DIRECT EXAMINATION

15   BY MR. SEGAL:

16   Q   Mr. Smith, can you give us your address?

17   A   7112 Adelphi Road, Hyattsville, Maryland.

18   Q   Where are you employed?

19   A   Howard University hospital.

20   Q   What is your position there?

21   A   Radiology supervisor.

22   Q   How long have you been working there at that position?

23   A   17 years.

24   Q   Are you related to Mr. Michael Smith who is sitting next to

25   me?

26

1   A   Yes.

2   Q   How are you related?

3   A   Brother.

4   Q   Did you grow up in the same household with him?

5   A   Yes, I did.

6   Q   As you grew up, did you have opportunity to observe your

7   brother?

8   A   Yes, I did.

9   Q   Could you tell us first of all, as a child, did your

10  brother, Michael Smith have any leadership qualities?

11  A   No, he did not.

12  Q   Was he a follower or a leader in his interactions both with

13  his family and with his peers?

14  A   He is more of a follower.

15  Q   Okay.  Was it his nature to tell other people what to do?

16  A   No.

17  Q   Okay.  Did you eventually move out of the family house

18  yourself?

19  A   Yes, I did.

20  Q   Did you continue to see and speak with your brother after

21  you moved out of the house?

22  A   Yes.

23  Q   As an adult, did you have an opportunity to observe your

24  brother and speak with him?

25  A   Yes, I did.

1    Q    Until what point in his life would that include?  When did

2    you stop seeing him on a regular basis?

3    A    I would say about 1987 somewhere around there.

4    Q    After 1987, did you continue to see him up until the time

5    he was incarcerated?

6    A    Yes.

7    Q    As an adult could you tell us whether or not your brother

8    had any leadership qualities?

9    A    Just from conversation, no.

10   Q    Was he a follower or a leader as an adult?

11   A    Follower.

12   Q    Would you ever see him telling other people what to do?

13   A    No.

14   Q    Or bossing anybody around?

15   A    No.

16   Q    Is your brother an outgoing person?

17   A    No.

18   Q    How would you describe him?

19   A    Very quiet and to himself.

20   Q    Okay.  In the mid to late 1980s, do you know what kind of

21   car your brother was driving?

22   A    BMW.

23   Q    Do you know what model BMW that was?

24   A    I think it was a 320I.

25   Q    Did he purchase that new or used?

28

1    A    First time I seen it it was an older model.  I know it

2    wasn't new the first time I seen it.

3    Q    Did you ever see him driving any other cars besides that

4    car?

5    A    That's the only car I seen him drive.

6    Q    Did you ever see him wearing any gold jewelry?

7    A    No.

8    Q    Did you ever see him wearing any fancy or flashy clothing?

9    A    No.

10   Q    Did you ever see him flashing any money around?

11   A    No.

12   Q    Did you see him spending extravagantly in any other way?

13   A    No.

14          MR. SEGAL:  That's all I have of this witness, Your

15   Honor.

16          THE COURT:  Miss Skalla?

17   °                  CROSS-EXAMINATION

18   BY MS. SKALLA:

19   Q    Mr. Smith, were you aware that Michael was involved in the

20   distribution of cocaine and crack cocaine?

21   A    No, I was not.

22   Q    Were you aware that Hassan Smith was involved in the

23   distribution of cocaine and crack cocaine?

24   A    No, I was not.

25   Q    Were you aware of Mr. Michael Smith's connection to someone

1  by the name of Brian Benjamin who was a supplier responsible

2  for quantities of cocaine from Trinidad?

3  A   No.

4  Q   Were you aware of Michael Smith's involvement with Walter

5  Ferguson and that Walter Ferguson delivered crack cocaine for

6  Michael Smith?

7  A   No.

8  Q   Were you aware that Hassan Smith delivered crack cocaine

9  for Michael Smith?

10  A   No.

11  Q   Were you aware that the BMW that Michael Smith drove was a

12  1986 BMW?

13  A   I didn't know what year it was.

14  Q   Wasn't it the white one?

15  A   Yes.

16  Q   What year did he get that?

17  A   I can't recall.

18  Q   Was it in 1988?

19  A   I still, no.

20  Q   You don't remember?

21  A   I don't remember.

22  Q   Were you aware of Michael Smith's drug relationship with

23  Paul Winestock, Jr.?

24  A   No.

25  Q   Were you aware of how Michael Smith made his money?

30

1    A    No.

2    Q    Did you ever discuss with him how he made his money?

3    A    No.

4    Q    Did you ever discuss drug dealing at all with Michael

5    Smith?

6    A    No, I did not.

7    Q    Did you discuss it with Hassan Smith?

8    A    No.

9    Q    Did you discuss drug dealing with Vincent Knight?

10    A    No.

11    Q    Were you aware of Michael Smith's supervisory role in drug

12    dealing over Vincent Knight?

13    A    No.

14            MR. SEGAL:  Your Honor, I am going to object to the,

15    most of these questions are assuming facts that I am not sure

16    are necessarily should be assumed.

17            THE COURT:  Well since it is a court proceeding, I

18    think more leeway is allowed.  Overruled.

19            MS. SKALLA:  I have no further questions, Your Honor.

20            THE COURT:  Anything else, Mr. Segal?

21            MR. SEGAL:  No, Your Honor.

22            THE COURT:  Thank you Mr. Smith.

23        (Witness excused.)

24            MR. SEGAL:  Your Honor, as far as role in the offense,

25    as the introductory language to Section 3B1.1 and 1.2 of the

1    Guidelines states just because there is multiple participants

2    in the event doesn't mean that there has to be someone getting

3    an upward adjustment or a downward adjustment pursuant to 3B1.1

4    or 3B1.2. There can be individuals who conspire to commit an

5    offense and be relatively equally culpable. Therefore, just

6    because Hassan Smith did not get an upward or downward

7    adjustment doesn't mean that somebody else involved in that

8    conspiracy must get an upward or downward adjustment. It is

9    very possible and there is no reason to assume that two people

10   don't act in concert with roughly equal culpability, and

11   neither one having supervisory role over the other.

12       Just because one party involved in a criminal activity asks

13   another party to do something for them that doesn't make them a

14   supervisor or a leader. Two people go into a bank to rob a

15   bank, and the first defendant drops the bag and says to the

16   other one pick that up for me, that doesn't make the first one

17   supervisor over the second one. Very often in everyday life we

18   ask other people to assist us in various endeavors, that

19   doesn't make us supervisors or leaders over that person just

20   because we ask them to assist us on a particular occasion. I

21   believe that the enhancements in 3B1.1 and the downward

22   adjustments 3B1.2 are specifically for people who have a

23   substantial or significant leadership role or minimizing role.

24   In fact, the Fourth Circuit has acknowledged that in the case

25   of U.S. v. Campbell 935 F.2d 39 which is a 1991 Fourth Circuit

32

1    case where the court said to get a downward adjustment under

2    3B1.2, a defendant must be substantially -- the word the Court

3    used was substantially -- less culpable than the average

4    participants.  Conversely you have to be substantially less

5    culpable you get a downward adjustment the defendant must

6    likewise be substantially more culpable than the average

7    participant to get an upward adjustment under 3B1.1.  I would

8    suggest to the Court that Mr. Smith is not substantially more

9    culpable that his co-conspirators Vincent Knight and Hassan

10   Smith; that they were more or less co-equals, and just because

11   on one occasion Michael Smith calls up Hassan Smith and balls

12   him out for not dealing with a customer right away doesn't make

13   him a supervisor.  That conduct is perfectly consistent with

14   the two of them being co-equals.  Two people are engaged in an

15   enterprise together.  One of them is screwing up, the other one

16   balls him out for screwing up, doesn't make that first one a

17   supervisor over the second one.

18       Testimony is that Hassan Smith on at least a few occasions

19   made deliveries for Michael Smith.  But again, just because one

20   person assists another, or if they are acting in concert and

21   one person is doing a more menial job at one particular phase,

22   doesn't make the other party a supervisor or a manager over the

23   other.

24       Johnny Millett's relationship with Michael Smith again,

25   does not appear that Johnny Millett is a worker for Michael

1    Smith.  He's a friend.  He grew up together in the neighborhood

2    with Mr. Smith, and on a number of occasions he gave him a

3    ride.  That doesn't make Michael Smith a supervisor over Johnny

4    Millett.  Johnny Millett is not a member of this conspiracy.

5    He was just simply someone in the neighborhood who hung out

6    with these people, and occasionally would do a favor and have a

7    favor done in return.

8         More so during the first trial than in the second trial of

9    these cases, numerous witnesses testified that most of these

10   individuals were selling drugs in the Woodbridge neighborhood

11   were working more or less as independent contractors.

12   Occasionally from time to time one would help another.  And

13   that would apply to Michael Smith as well.

14        Next Your Honor, the base offense level that the Court has

15   just found, a level 40 based on over 5 kilograms of cocaine

16   base, takes into account the size and the degree of the

17   conspiracy for which Mr. Smith has been convicted.  To give

18   additional points to him for role in the offense simply because

19   it was a large conspiracy or at least in the context of the

20   amount of drugs that were involved would be double counting by,

21   when the Sentencing Commission came up with these high base

22   levels for large quantities of drugs, it takes into account the

23   degree of the organization that must be involved to get to

24   those high levels, high quantities; and it would be

25   inappropriate for the court to simply give the additional

34

1    points here because of the size of the amount that was

2    involved.  In fact, the _Fuller_ case which I cite in my

3    memorandum speaks specifically to that point.

4       Further Your Honor, in the background section of Section

5    3B1.1 it states that one of the criteria, one of the reasons

6    for giving the extra points under 3B1.1 for supervisory or

7    managerial role is to punish more severely those persons who

8    have profited more from the offense.  Michael Smith did not

9    appear to profit that much from this ongoing conspiracy.  He

10   drove a fairly nice car, but that was the only car he had.  He

11   did not purchase it new.  Other than that he had absolutely no

12   trappings of someone who had large amounts of money.  He didn't

13   have gold jewelry.  He didn't have fancy clothes.  He wasn't

14   doing any of the other things that one might expect someone who

15   was profiting in a big way from drug dealing.

16      Finally Your Honor, and perhaps the primary thrust of my

17   argument in this regard, is that even if we accept that Michael

18   Smith did have a leadership or managerial type of role, he did

19   so only for a very small time in relationship to the time of

20   this conspiracy went on.  All of the evidence that was

21   presented in this case, shows Michael Smith to be working for

22   Ricardo Smith from the inception of the conspiracy up until

23   Ricardo Smith's arrest in October 1989; and it was only after

24   Ricardo Smith was arrested in 1989 that Michael Smith allegedly

25   steps up into a leadership or managerial role vis-a-vis Hassan

35

1    Smith and Vincent Knight.  However, for three years, Michael

2    Smith is really playing a minimal role.  He is selling on

3    street level.  He is selling to Johnny Millett $20 rock or $50

4    rock.  He is helping to put the drugs into baggies.  Roles that

5    a minor player in an offense would play not a major player.  It

6    would be unfair to give him extra points for his role during

7    the last year of the conspiracy or less than the last year of

8    the conspiracy and not give him credit for the minor role he

9    plays during the first three years of the conspiracy.  The

10   government on many occasions during the course of the trial

11   used the term "fluid conspiracy" that the roles of the various

12   parties to the conspiracy would change from time to time during

13   the course of the conspiracy.  That buyers became sellers and

14   sellers became buyers and so forth.  I believe there is certain

15   validity to that.  And even if Michael Smith played a

16   supervisory role at some point, the timeframe during which he

17   played a supervisory role, only a certain percentage of the

18   five kilograms that the Court is using to find a base level 40

19   was he a manager.  And I would suggest to the Court that it

20   would only be appropriate to raise by two points the offense

21   level for role in the offense if he was a manager during the

22   entire amount of conduct that makes up the base level.  And

23   unless he was a manager for at least five kilograms of crack

24   cocaine, that it would be inappropriate for the Court to give

25   him this enhancement.

36

1    And finally Your Honor, again, I would point out to the

2  Court United States v. Edwards which I pointed out earlier

3  regarding the foreseeability as well as the scope of the

4  agreement.   In Edwards it talks about if one person agrees with

5  his co-conspirators to have a particular role that he can't be

6  found accountable beyond what he has agreed with his

7  co-conspirators to be.   If Michael Smith agreed with Ricardo

8  Smith to assist him in his activities, then that's the role

9  that he should be accountable for not for a role that goes

10  beyond what he ever agreed with his co-conspirators.

11    For those reasons Your Honor, we would submit to the Court

12  that it would be in appropriate to give Michael Smith any

13  additional points above the level 40 that the court is already

14  indicated would be the base offense level.

15        THE COURT:  Anything else, Miss Skalla?

16        MS. SKALLA:  Yes, Your Honor.  I am actually quite

17  puzzled at many of the comments that Mr. Segal is made, and I

18  just don't know where they are legally founded either in the

19  guidelines or in the case law.  In fact, much of what he

20  indicates is inconsistent with the guidelines and the plain

21  language of the guidelines.

22    First of all, I find nowhere under the base offense

23  calculation section, nowhere do I find language consistent with

24  if you have a big organization then forget about the role

25  adjustment.  Obviously Congress intended those to be completely

1  separate calculations and considerations and they are to be

2  used together to arrive at the sentence.

3      Yet if Mr. Segal would like to point it out, perhaps I may

4  have missed the language that indicates once you use a high

5  base offense level you can simply ignore the role adjustment.

6  In fact, the clear language under 3B1.1 indicates just the

7  contrary.  They are not exclusive.  They are to be considered

8  together.  I am referring to page 244 at the very top under

9  Background:  If I might, I would like to read it.

10          This section provides a range of adjustments to

11          increase the offense level based upon the size of a

12          criminal organization.

13  Again, clearly an indication that they are meant to be used

14  together.

15          (i.e., the number of participants in the offense) and

16          the degree to which the defendant was responsible for

17          committing the offense.  This adjustment is included

18          primarily because of concerns about relative

19          responsibility.  However, it is also likely that

20          persons who exercise a supervisory or managerial role

21          in the commission of an offense tend to profit more

22          from it and present a greater danger to the public

23          and/or are more likely to recidivate.  The

24          Commission's intent is that this adjustment should

25          increase with both the size of the organization and

38

1          the degree of the defendant's responsibility.

2   Contrary to what Mr. Segal indicated, there is no intent here

3   that the Commission, the Commission did not intend for courts

4   to find precisely that in this case Mr. Smith profited more.

5   It's an observation in explaining why the increase is intended

6   by Congress and is a separate consideration by the courts.

7       In addition Your Honor, it is difficult for me to

8   understand factually how this Court can look at the early

9   conduct of Mr. Smith and arrive at the conclusion that he was a

10  minor participant.

11      Again looking at <u>Application Note</u> 3 on page 244 Application

12  Note to 3 B1.2

13          (3) For purposes of Section 3B1.2(b), -- calling for a

14          decrease of two levels -- a minor participant means

15          any participant who is less culpable than most other

16          participants, but whose role could not be described as

17          minimal.

18  To indicate that Mr. Smith who was involved in the organization

19  of kilogram quantities of crack cocaine the cooking of those,

20  in the distribution of those, and who recruited and employed

21  others, for example, Johnny Millett, Tony Green, Walter

22  Ferguson, Hassan Smith and many others is simply to ignore most

23  of the facts that were produced at trial.

24      The argument could certainly be made that Michael Smith is

25  entitled today to a four level increase based on the language

1   of the Guidelines, the government is not seeking that, but

2   clearly at no point in the proof that was presented at trial

3   was Mr. Michael Smith presented as anything more than an

4   organizer and a leader.  Clearly his role increased in '89 and

5   '90.  During the time at some point he met Ryan Benjamin.  His

6   status increased.  His role increased and he began to supervise

7   more people.  Again, I could understand the argument if there

8   was one event during which for example, Hassan Smith

9   coincidently happen to deliver for Michael Smith, but again to

10  draw that conclusion the Court would have to disregard most of

11  the evidence.  We are talking about discussions that occurred

12  time after time after time, deliveries that were made time

13  after time after time.  And Mr. Smith's own words time after

14  time after time place him in a supervisory and a managerial

15  role again of people including Hassan Smith, Tony Green, Walter

16  Ferguson and Johnny Millett and many many others.

17          THE COURT:  Anything else, Mr. Segal?

18          MR. SEGAL:  Yes, Your Honor, just in response to the

19  relationship of the base level to the role of adjustment.

20      First of all, if I can just quote from U.S. v. Fuller on

21  page 1221, the Court says:

22          Moreover, we think that to apply an upward adjustment

23          in these circumstances might present a risk of

24          subjecting the defendant to double counting

25          sentencings.  The District Court's decision to make an

1      upward adjustment of two levels rested primarily on

2      the fact that _Fuller_ was engaged in distributing large

3      quantities of marijuana.  However, the quantity of

4      marijuana involved had already been taken into

5      consideration in determining the base offense level.

6   Further Your Honor, I would note that the 1993 proposed

7   amendment to the Guidelines propose that the base offense level

8   in drug cases under 2D1.1 I think is the section be reduced to

9   a level 36 which I believe indicates the recognition by the

10  Commission that taking the level so high to start with and then

11  adding additional points on top of that just makes no sense.

12  That if the Court is going to find levels 40 and 42 that that

13  already has to some degree be taken into account the fact that

14  these are large organizations dealing with large quantities,

15  and just because somebody who is convicted in one of those

16  organizations with a high offense level on some occasions might

17  ask somebody else to do something, does not warrant bringing a

18  level even higher yet than these already high levels.  A level

19  42 as Your Honor realizes even for a Category 1 person, already

20  brings them up to 30 years to life before you make one

21  adjustment.  I don't think that the Sentencing Commission

22  really intended to virtually guarantee anybody with these high

23  levels that they must get life without parole.  The fact that

24  the amendments have been proposed to bring down that maximum

25  level under drug tables to 36 indicates that that is the

41

1  intent.  If the Court was going to find a lower level based on

2  not all of the conduct that Mr. Smith was engaged in and only

3  the latter part of his conduct then perhaps it would be

4  appropriate for the Court to give him a two level adjustment

5  upward for his role.  But the Court takes into consideration

6  all of his conduct from 1986 all the way up through 1990,

7  during most of that period he was not a supervisor or a leader

8  or organizer, he was a minor participant.

9      Even Miss Skalla just argued to the Court that the mere

10  quantity rebuts any argument that the defendant could be a

11  minor participant.  Well that's exactly what I am saying is if

12  we are going to say that the mere quantity at that level 40

13  quantity makes him a large participant because he is

14  participated in that level 40, then it is not appropriate to

15  add two levels beyond that for role, unless he really played a

16  significantly more important role than the other people during

17  the entire conduct, and that's just not the case here.  During

18  most of the time, the transactions that he is being found

19  accountable for which is primarily the ones that Johnny Millett

20  testified to that occurred prior to Ricardo Smith's arrest, he

21  was a minor player.  He was not a supervisor.  It was only at

22  the very end, and the quantities that were involved at the end

23  were relatively small only in relationship to the total

24  quantities, but still relatively small to the entire conduct

25  that he engaged in.

42

1    Therefore it would be inappropriate to give him those extra

2    two levels.

3        ⊙    MR. GEISE: Your Honor, if I might briefly. I know

4    you don't want us back and forth for eternity, but just on one

5    point. On the proposed amendment I could be wrong, but my

6    understanding is the proposed amendments that are presently

7    floating around are what everybody in the world submitted to

8    the Commission. That is to say, prosecutors, public defenders,

9    people on every side of the issue, and the Commission is taken

10   a compilation of all of those, put them out for public comment,

11   and is just now beginning its own hearings to come up with its

12   proposals to Congress. And I believe those hearings, at least

13   I talked to somebody at the Commission a couple of weeks ago,

14   and they told me the Commission was just beginning those

15   hearings. So I think what Mr. Segal is quoting is the

16   compilation of what everybody has proposed as amendments. And

17   I would hazard to guess that what he is quoting is some defense

18   attorney's proposed amendment. So, those really aren't --

19   first of all, of course, it is what the Commission had actually

20   proposed as amendments, it would tend to suggest that what we

21   are arguing is depressive law. But I don't think it even

22   reaches that point, because my recollection is that what the

23   Commission did about a month and a half or two months ago was

24   submit all of these proposals from judges, from defense

25   attorneys, from prosecutors, they have begun their own internal

43

1    hearings, and I think sometime relatively soon they will come

2    up with their proposals and then go to Congress and Congress

3    can accept or reject.  I don't think they have come up with

4    their proposals yet.  So I suspect that what Mr. Segal is

5    quoting is one of those proposals given to the Commission by

6    someone, but it doesn't really that imprimatur.

7          THE COURT:  Well, I am not sentencing on the basis of

8    anything except what is before us as law today.

9       All right, anybody else have anything on this issue?

10          MS. SKALLA:  No, sir.

11          MR. SEGAL:  No, Your Honor.

12          THE COURT:  I think a lot of what Mr. Segal has raised

13   has some merit.  There is a difference in the direct

14   participation of Mr. Smith or anybody in his position becomes

15   accountable for by reason of their presence and by reason of

16   their knowledge and involvement regarding sales.

17      Mr. Segal points that up along with the fact that to a

18   large extent, this organization such as it was involved some

19   people who were basically independent contractor types, and I

20   think that is largely the situation.  Of course in Mr. Smith's

21   situation, he was convicted of the conspiracy count.

22      The factors that are set out in the Guidelines that are to

23   be considered that I believe to be critical here are the

24   exercise of the decision-making authority.  While there were

25   people who at points in time were making deliveries at Mr.

44

1    Smith's direction, I find very little evidence of the actual

2    exercise of decision-making authority on Mr. Smith's part.  The

3    fact of the recruitment of accomplices I find to be unproven

4    with respect to Mr. Smith in terms of actually recruiting

5    accomplices, although people again may have been delivering at

6    his request.

7         The claimed right to a larger share of the fruits I don't

8    believe there is any evidence of that.

9         Planning and organizing, I find very little in Mr. Smith's

10   activities that fits the planning and organizing factor.

11        The degree of control and authority both with respect to

12   the amount, the degree as to the amount of control, or the

13   amount of authority Mr. Smith had, that was relatively small it

14   seems to me.  And the time duration as Mr. Segal argues I think

15   is another aspect of the degree of the control and authority to

16   the extent that there was some control and some authority it

17   was of relatively short duration.

18        Overall, the bottom line I do not believe that the evidence

19   measures up even to a preponderance that Mr. Smith fits an

20   aggravating role even though his role was clearly greater than

21   that of the, some others such as Hassan Smith and Vincent

22   Knight.  But in my view he was not an organizer or a leader or

23   a manager or a supervisor.  So I am going to deny the

24   adjustment basis of role.

25        Counsel, I do not know whether the other matters that were

45

1   discussed are matters that are still in dispute.

2      Apparently acceptance of responsibility Mr. Segal is not

3   waiving that, although I think it is very clear from what is

4   before me in the posture that we are in today that there has

5   not been acceptance of responsibility as the guidelines

6   invision it or for purposes of an adjustment, regardless of the

7   view that one takes with regard to the statements of the

8   probation officer and the presentence report or whatever.  This

9   is simply not a situation where Mr. Smith has availed himself

10  of what is required to meet that adjustment.  I am going to

11  deny that.

12     I do not think there is anything else in dispute with

13  respect to guideline calculations, correct?

14          MR. SEGAL:  That is correct, Your Honor.

15          THE COURT:  All right.  The overall then offense level

16  that I conclude is appropriate as a Level 40.

17     There is not any question about the criminal history, there

18  simply isn't any.  So it is a Category 1.

19     I find no basis for any departure notwithstanding the

20  authority that I may have to depart.  So that the finalized

21  guideline ranges would appear to be a range of 292 to 365

22  months as to each of the four counts.

23     With respect to supervised release a range of 3 to 5 years

24  as to each of the four counts.

25     Fine range of 25,000 to four million dollars as to each of

46

1    the four, and a special assessment of $50 as to each.

2    All right, Miss Skalla, anything you would like to say with

3    regard to where the sentence should be?

4    °    MS. SKALLA:  Your Honor, unlike in many of the other

5    sentences where the government recommended or acquiesced on the

6    low end finding, the government is requesting a sentence of 360

7    months in this case or 30 years.

8    Your Honor, Hassan Smith was much less involved in this

9    activity than Michael Smith and his sentence was 292 months.

10   The government is asking for an increase in his sentence from

11   that to reflect the increased role and the increased damage to

12   society inflicted by Michael Smith.

13   Again, the testimony, the evidence was that Michael Smith

14   was involved in the distribution of significant quantities of

15   cocaine into Washington and Maryland over a very long period of

16   time.

17   In addition as we have already referenced, he was

18   responsible for connecting Brian Benjamin with the Washington

19   and Maryland drug sources.  Unfortunately, during the period of

20   the wire intercepts Mr. Benjamin was laying low because of an

21   arrest in New York, I believe it was, and the full extent of

22   Michael Smith's involvement was not revealed through the wire

23   intercept because of that particular turn of events.  However,

24   the conversations that were intercepted certainly disclose the

25   nature of the relationship between Brian Benjamin and Michael

47

1    Smith.  So the government is asking for a sentence that would

2    reflect the difference in the roles played by Hassan Smith and

3    Michael Smith and we are requesting a sentence of 360 months

4    which I do believe would adequately reflect the differences in

5    their roles.

6         I believe another defendant Melvin Ford was sentenced to

7    360 months, 30 years.  His role was not unlike Michael Smith.

8    He was directly connected to a significant source of supply.

9         Melvin Ford was directly connected to James Cole in

10   Philadelphia.  James Cole was a source of kilogram quantities

11   of supply, so to was Michael Smith directly connected with

12   Brian Benjamin who was a source of kilogram quantities of

13   cocaine and they were similarly situated.  And again, Melvin

14   Ford got a sentence of 360 months which again would accurately

15   reflect his involvement and the degree of damage he inflicted

16   on society.

17        THE COURT:  Mr. Segal.

18        MR. SEGAL:  Your Honor, Michael Smith is 30 years old

19   now.  For the Court to give him 30 years in jail he'll be 60

20   years old when he gets out.

21        I am not going to minimize what Michael Smith did.  Clearly

22   he was involved in a large scale drug distribution.  However,

23   the conduct he engaged in does not warrant in effect locking

24   him up for the rest of his life.  For him to get out at the age

25   of 60, it is virtually the same as putting him in jail for the

48

1    rest of his life.

2         292 months which is at the bottom of the range is still a

3    very very long-time for selling drugs.  There is no allegation

4    that Michael Smith like some of the other defendants that were

5    involved in this case ever had any connection with any weapons,

6    any type of violence.

7         Other than the damage that drugs do to our society, Michael

8    Smith is not a danger to our society.  And any sentence within

9    the guideline range in my opinion is more than ample punishment

10   for what has taken place.

11        I would also suggest to the Court that as far as a

12   deterrent effect, I am not sure that there is any distinction

13   between 292 months and 365 months.  Also suggest that a

14   sentence near the bottom of the range would still keep Mr.

15   Smith in prison until he is well, well into middle age and not

16   likely to be engaging in the kind of conduct that got him into

17   trouble when he gets out.

18        I just cannot see any good reason for the Court to go

19   anywhere near the top of the guideline range here.  The

20   guidelines are extremely, extremely harsh for these types of

21   offenses.  Federal prisons are going to be overcrowded for the

22   next generation because of the sentences that are being given

23   in federal court over the last few years since the guidelines

24   went into effect, and we had prosecutions result in these kind

25   of sentences.

49

1        I would also point out Your Honor, that in the Government's

2    sentencing memorandum, the final page of the conclusion, the

3    government states the sentencing range for Hassan Smith is 324

4    to 405 months, and for Michael Smith it's 360 months to life.

5    They would assume that the court would give the extra two

6    points for role and responsibility.

7        The final sentence is the government recommends that

8    Michael Smith and Hassan Smith be sentenced at the low end of

9    the applicable guideline range.  The government had no problem

10   with Mr. Smith getting sentenced in the low end of the

11   guideline range as long as they got what they wanted in the

12   level.  Now that they didn't get what they want in the level

13   they are asking that he be sentenced at the top of his

14   guideline range.  If they saw no reason to have him sentenced

15   anywhere but at the bottom of the range, when they thought he

16   was going to be a Level 42, that shouldn't change because the

17   Court has found by a preponderance of the evidence that a level

18   40 is appropriate.  I think the Government's request here is

19   analogous to their request to the Court throughout this trial.

20   Although the majority of the defendants that were involved were

21   acquitted of conspiracy, they still in sentencing ask the Court

22   to sentence people exactly as if they had been convicted of a

23   conspiracy.  And again, here again, even though the Court has

24   found that Mr. Smith is a level 40 rather than a level 42, the

25   government is asking that he be sentenced as if he had been

50

1   found to be a level 42; give him 360 months that they were

2   requesting for a level 42.

3       I don't think that is appropriate Your Honor, although the

4   Court did not necessarily give him the absolute bottom 292

5   months I would still suggest to the Court that a sentence very

6   close to the bottom of the range would be appropriate.

7       MR. GEISE:  Your Honor, I just want to make a comment

8   or two.

9       I think one can deal with these matters in a mature way

10  between counsel.  Obviously, the government requested 360

11  months in its sentencing memorandum, and it is still requesting

12  360 months.  That seems to me to be fairly equitable.  I

13  believe Mr. Segal's argument is fairly infantile that the

14  government is somehow trying to disregard the Court's finding.

15  The Court will obviously impose the appropriate sentence.  The

16  government suggested 360 months in its memo and continues to

17  suggest 360 months.

18      I would point out to the Court and to Mr. Segal if he is

19  followed the sentencings of other defendants in this case, that

20  the law seems to support the Government's argument that

21  regardless of the acquittal on a conspiracy count that relevant

22  conduct can include a wide range of participation, and the

23  court has so found.  So the government's made an argument that

24  in the Court's view is supported by the law.  One can dispute

25  whether 360 or 292 months is the appropriate sentence.

1    Unfortunately one would hope that one could do that as mature

2    counsel rather than making gratuitous attempts.  And it's

3    regrettable, I generally don't expect it from Mr. Segal, but

4    obviously I have been wrong in my assessment.

5        THE COURT:  Anything else, Mr. Segal?

6        MR. SEGAL:  I don't care to respond to that, Your

7    Honor.

8        THE COURT:  Mr. Smith, you have the opportunity if you

9    would like to say anything that you want to say to me in terms

10   of what you believe I should know before I impose sentence

11   within the range, if there is anything you want to say about

12   it.

13       THE DEFENDANT:  No, Your Honor.

14       THE COURT:  All right.  In selecting the appropriate

15   sentence within the range, this is the first sentencing in the

16   group of defendants in this case I believe in which the

17   government has requested, or I have determined that anything

18   other than the lowest end of the range be imposed.

19       Looking at the low end which would be 292 months and

20   considering that against the factors that must be considered in

21   deciding what the proper sentence is, in particular the

22   seriousness of the offenses which Mr. Smith stands convicted,

23   something respect for the law, a just punishment, deterrence,

24   protection of the public, I am satisfied that those factors are

25   factors that would be taken care of with a sentence at the low

52

1    end, but there is another aspect to it, and that has to do with

2    what we were talking about a few moments ago in discussing Mr.

3    Smith's role.  While I did not conclude that his role was one

4    that warranted adjustment for aggravation, I think the term is

5    used in the Guidelines, nonetheless, it is clear that his role

6    was a greater role than that played by others and has been

7    mentioned Hassan Smith, Vincent Knight and others.

8         Miss Skalla also argues, and I think with some merit the

9    evidence with regard to the connection between Mr. Smith and

10   Brian Benjamin.  Clearly there was deeper involvement.

11        Looking at it with those considerations, it is clear to me

12   that a sentence greater than that which would be otherwise

13   warranted is appropriate.

14        For that reason, IT IS THE JUDGMENT of the court that Mr.

15   Smith be committed to the Bureau of Prisons for a term of 324

16   months as to Count 4.

17        As to Count 7, the sentence is likewise 324 months to run

18   concurrently with the sentence imposed as to Count 4 and

19   likewise with respect to Count 8, the sentence is 324 months to

20   run concurrently with the sentence of Count 4.

21        Count 9, the sentence is 324 months to run concurrently

22   with the sentence imposed in Count 4.

23        A term of supervised release of five years will be imposed

24   with regard to Count 4 which will carry the standard conditions

25   that are printed on the judgment form.

53

1       In addition, if the probation officer at that point in

2  time, that is Mr. Smith's release deems it to be appropriate

3  that he then enter a drug program that will be an additional

4  condition.  A $50.00 assessment for each of the counts totaling

5  $200 will have to be paid.

6       The supervised release as to Count 4 is also to be

7  duplicated with each of the other three counts on a concurrent

8  basis.

9       In view of the findings in the presentence report regarding

10  financial responsibility which I adopt and which indicate that

11  Mr. Smith is unable to pay a fine, I will not impose any fine.

12  I have said the special assessment of $200 will have to be

13  paid.

14       Mr. Smith, you understand I am sure that you have a right

15  of appeal in this matter.  That right has to be exercised

16  within 10 days of today's date.  Whatever records, transcripts

17  are required to prosecute that appeal will be provided for you

18  if you are unable to provide them for yourself.  I am sure Mr.

19  Segal will be happy to provide you with any other information

20  regarding an appeal and to note an appeal if you so desire.

21       MR. SEGAL:  Your Honor, I would ask the clerk to

22  inform me whether Miss Brown had filed a notice of appeal in

23  this case.  When she gave me her file I saw that there was a

24  notice of appeal in there which would have been premature.

25       THE CLERK:  Yes.  After sentencing you file your

54

1   notice of appeal.

2          MR. SEGAL:  Right.  I was just wondering if she had

3   filed it prior to sentencing.

4          THE COURT:  You better file one.

5          MR. SEGAL:  Okay, I will file one, Your Honor.

6          THE COURT:  I should also say in view of what you

7   raised at the outset of the hearing today, which was in effect

8   a request for a continuance to explore some other aspects, that

9   is denied.

10      I think that covers what we need for the record.

11      Anything else, counsel?

12         MR. SEGAL:  No, Your Honor.

13         MS. SKALLA:  No, Your Honor.  Thank you.

14         THE COURT:  All right.

15         MR. SEGAL:  Thank you Your Honor.

16         MR. GEISE:  Thank you Your Honor.

17         THE COURT:  Good luck, Mr. Smith.

18         THE CLERK:  Please rise.  This honorable court stands

19   adjourned.

20      (Adjourned.)

21

22

23

24

25

55

CERTIFICATION


I, Linda R. Prince, hereby certify that I was the Official Court Reporter present during the foregoing proceedings and that this verbatim transcript is true and accurate to the best of my ability.  The proceedings were taken by me in machine shorthand, and this verbatim transcript was subsequently prepared by me utilizing the Xscribe Computer-Aided Transcription system.


_____
Linda R. Prince
Official Court Reporter
United States District Court
District of Maryland