1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

    vs.

WALTER TREVAUGHN SMITH,

    Defendant

_____/

CRIMINAL NO.
WN-90-0454

Baltimore, Maryland

January 22, 1993

REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDINGS
(Sentencing)

BEFORE:

    THE HONORABLE WILLIAM M. NICKERSON

APPEARANCES:

    For the Government:

        BARBARA SKALLA, ESQUIRE
        Assistant United States Attorney

        JACK V. GEISE, ESQUIRE
        Assistant United States Attorney

    For the Defendant:

        ARTHUR M. REYNOLDS, JR., ESQUIRE

REPORTED BY:

    Donna M. Becker

12

1          Again, I think the bottom line is there was no
2     other reason for Mr. Smith to have guns that didn't have
3     bodies on them.  They didn't have serial numbers and it
4     couldn't be traced.  They were held in false names unless he
5     was using them for illegal purposes.  The only one there is
6     evidence of is drug trafficking.
7               THE COURT:  Anything else, Mr. Reynolds?
8               MR. REYNOLDS:  No, Your Honor.
9               THE COURT:  With respect to the first issue as to
10    the amounts of drugs attributable to Mr. Smith, my conclusion
11    is that the language that we have been dealing with here and
12    which Mr. Reynolds refers to as puffery and bragging is
13    inferentially more than puffing or bragging in this situation.
14              There were six convicted counts, six transactions of
15    trafficking of which Mr. Smith stands convicted.  And
16    reviewing the government's memorandum which recalls a lot of
17    the evidence with respect to this, and looking at only some
18    of these items as being clearly evidence of meeting the
19    government's burden with respect to amounts, I look first at
20    the June 14th transaction on page two of the government's
21    memorandum involving 28 grams; the July 16th discussion
22    involving 26.87 grams.  On page four, August 15th matter,
23    dealing with 21.12 grams.  Over to page six, the September
24    27th matter dealing with 11.25 grams.  On that same page, the
25    matter of the five kilos which notwithstanding Mr. Reynolds'

12    1    argument I believe is substantiated by a preponderance of the
      2    evidence.
      3         On page seven, I am not satisfied that those two
      4    kilos, and Ms. Skalla has admitted they may well be
      5    inseparable from the five, but the October 17th matter there
13    6    involving one and a half kilos I think has been sufficiently
      7    proved.
      8         On page eight, at the top, the 21 ounces, and then
      9    the other two on that page under October 30th involving four
     10    and a half ounces on November 4th of 25.93 grams.  On
     11    November 7th, on page nine, the three kilos that are
     12    discussed, are all matters that are sufficiently proved or
     13    satisfy me by a preponderance of the evidence, are
     14    attributable to Mr. Smith.
     15         If my arithmetic is correct, those total up to a
     16    little over ten kilos.  In any event, more than sufficient
     17    to meet the level which the government is arguing here, level
     18    40.  So my conclusion is that level 40 is clearly appropriate.
     19         With regard to the firearm issue, there was a lot of
     20    talk about guns throughout the trial with respect to a lot of
     21    the defendants, but looking at the case overall involving all
     22    of the defendants, it was rather strange to me that there was
     23    so little hard evidence of any actual use if there was any
     24    evidence of actual use of a gun.
     25         I am convinced that this was puffery and bragging

13

1   basically speaking, not that there weren't guns possessed,
2   not that Mr. Smith did not possess a gun but I believe that
3   it was talk more along the lines of a macho status symbol
4   kind of a thing to have a gun somewhere.
5           I think it is clear that the guns were not possessed
6   for hunting or some other purpose but I believe they were
7   strictly a status symbol kind of a thing.  He kept it home so
8   far as Mr. Smith was concerned.  And I rather doubt that he
9   would have pulled one out in conjunction with any of the
10  transactions that he became involved in.
11          I think that the guidelines, when they speak to
12  presence, means something more than possession.  And I simply
13  don't believe that the government has met its burden with
14  respect to the firearm.  So I will not add that enhancement.
15          With regard to acceptance of responsibility, as has
16  been indicated in more than one of these sentencing
17  proceedings with regard to other defendants who have argued
18  this point, there simply is not sufficient evidence that
19  Mr. Smith has fulfilled his obligation as to the guideline
20  procedure notwithstanding some admissions have been made.
21  Number one, they don't meet the basic criteria that they be
22  made prior to trial, and they simply are insufficient to meet
23  what is anticipated under the guidelines for an adjustment
24  downward.
25          I am not going to grant a downward adjustment, which

13

1     leaves us with a level of 40.  There is no contest as to
2     criminal history category being a category one.  So that the
3     guideline sentencing range, if I am reading it correctly, is
4     292 to 365 months.
5         With respect to the other aspects of sentencing,
6     supervised release, we would have a range as is indicated
7     in the presentence report of three to five years on each
8     count.  Fines, 25,000 to four million dollars on each count
9     and special assessment of fifty dollars on each for a total
10    of $300.
11        Mr. Reynolds, I guess it's back to you in terms of
12    where the appropriate sentence should fall within the range.
13        MR. REYNOLDS:  Your Honor, it would be our request
14    that the Court sentence Mr. Smith at the very bottom of the
15    guideline level which is 292 months.  Indeed, that's a very
16    substantial sentence, given all of the conduct that the
17    government has alleged in this case.
18        I think that the Court is aware that Mr. Smith,
19    certainly as reflected by the criminal history category of
20    one, has no prior criminal convictions and indeed only had
21    previous arrests for criminal offenses which were later
22    dismissed on two occasions, the other contacts with the system
23    being all traffic offenses.
24        This young man did make effort to accomplish
25    something in life.  He was educated.  He went to school.  He

```
13    1    finished college.  He received his degree.  He comes from a
      2    close-knit and supportive family.  He has many family members
      3    in the courtroom at the present time.
      4              Your Honor, Mr. Smith is not an individual who
      5    previously has had the benefit of supervision by the Court or
      6    the criminal justice system or a prior conviction to pull him
      7    up short and cause him to consider the path that he is on.
      8    At his first contact with the system he is faced with a
      9    guideline level of 292 to 365 months.
      10             Your Honor, all criminal conduct is serious and
      11   certainly the drug epidemic which sweeps our nation is very
      12   serious.  We submit, however, that it is not required or
      13   incumbent upon this Court to sentence this young man at
      14   anything other than the low end of the guideline range for
      15   any appropriate sentencing goal, certainly not for deterrence,
      16   certainly not for punishment.  I guess rehabilitation really
      17   isn't a sentencing concern too much anymore, although it was
      18   in earlier times.
14    19             We would submit that all appropriate sentencing goals
      20   can be accomplished by the Court imposing a sentence of 292
      21   months under the guidelines applicable as the Court has found
      22   them to be.
      23             THE COURT:  Mr. Smith, you have the opportunity if
      24   you would like to say anything that you want to say about what
      25   the sentence should be.
```

14

1          THE DEFENDANT:  Yes.  I'm sorry for the crimes that
2     I have committed, and I would just like to say to the Court
3     and to my family that I am sorry for what I did.  And I guess
4     I will have to use this opportunity that I will be spending
5     in a federal correction institute to better myself before my
6     return to society.
7          THE COURT:  Ms. Skalla.
8          MS. SKALLA:  Your Honor, I do have some comments.
9     Your Honor, the government is opposed to a low end sentence in
10    this case.  As the Court is aware, we have agreed or even
11    recommended the low end in most of the sentencings in this
12    case.  However, I think Mr. Smith presents a different
13    picture.  First of all, he has a college education.  He has a
14    degree in criminal justice or something akin to criminal
15    justice.  He did an internship with the probation department
16    in Washington, D.C..
17         Not only has he had opportunities in life but he has
18    had opportunities to see what is involved in the criminal
19    justice system.  He has had opportunities in the probation
20    department to see what drugs do, and yet through that and
21    through everything subsequent to that, despite his college
22    degree, he didn't seek gainful employment, and this is what he
23    chose to do for a living.
24         There are some other differences as well.  The low
25    end I don't believe distinguishes appropriately Mr. Smith

14

1     from other members or other defendants in this group, for
2     example, Michael Short and Carlos McGill.  Walter Smith is far
3     more culpable than either of those two gentlemen.  They
4     received 20-year sentences.  Mr. Smith deserves something more
5     than that.
6            Three hundred months is about 25 years and I can't do
7     the math for the other.  But there certainly should be, and
8     it's appropriate to look at the other sentences in deciding
9     what sentence within the range is appropriate.
10           Unfortunately Mr. Smith's phone was not tapped, his
11    home phone and his cellular phone.  We didn't capture many of
12    the conversations with Mr. Smith and some of the other lines
13    because of the way cellular phones are set up.  His cellular
14    phone was on the Cellular One system, the same system as some
15    of the other tapped lines.  And we would not necessarily
16    receive calls placed from Mr. Smith's phone to even the tapped
17    lines because of where the intercept occurs and which cell his
18    call would have transferred through in order to connect with
19    some of the other phones.  The call simply wouldn't have been
20    captured.
21           In addition, the evidence shows that Mr. Smith was
22    involved in some degree with not only Rick Austin in
23    Philadelphia.  We know Rick Austin was the one who connected
24    Paul Winestock, Jr. to Melvin Ford and to Jimmy, the supplier
25    in Philadelphia, to Eric Brown and Cynthia Brown.  But Rick

14

1  Austin was involved prior to his incarceration with drug
2  trafficking.
3      We know from the wiretap in the undercover case that
4  Mr. Smith was also associated with the folks in Philadelphia.
5  During one of the conversations, Mr. Smith talks about how
6  difficult it is to sell drugs from jail. He is referring to
7  Mr. Austin. He is referring to knowing that Mr. Austin is
8  continuing his trafficking from jail and talking about what a
9  difficult thing that is to do. That was one of the
10 conversations with Sergeant Dade.
11      So again we know Mr. Smith was not only connected to
12 Brian Benjamin, the Trinidadian supplier who supplied a
13 tremendous amount of cocaine to the Washington-Baltimore area,
14 Virginia area, but he was also connected with the Philadelphia
15 source of supply in this case.
16      The only other source of supply were the California
17 folks, and we don't know what connection existed with
18 Mr. Smith and those gentlemen.
19      so he is obviously connected. He has been involved
20 for a long period of time, and he is so much more culpable
21 than Michael Short or Carlos McGill.
22      In addition to that, Your Honor, we know that
23 Mr. Smith supervised other people and had his own narcotics
24 distribution enterprise. He talks during one conversation
25 about Jerome getting arrested and he has got to go line up a

14   1       lawyer for Jerome, one of his workers.

     2               He also talks to -- referred to on page five -- about

     3       setting up shop in Virginia Beach because the market is wide

     4       open. He is interested in getting a sky pager for one of his

     5       associates, one of his workers in Virginia Beach.

     6               So unfortunately the full picture of Walter Smith

     7       wasn't painted but I think there is enough of an outline that

     8       the Court can safely conclude as the evidence shows that he

     9       certainly deserves a sentence that is nowhere near what

    10       Michael Short and Carlos McGill received.

15  11               For those reasons, Your Honor, I think the low end

    12       of the guideline range is simply inappropriate for Mr. Smith.

    13               THE COURT: Mr. Reynolds, anything else that you

    14       would like to say?

    15               MR. REYNOLDS: Your Honor, with respect to the

    16       allegation that Mr. Smith had employees and sought to branch

    17       out to Virginia Beach and wanted a Sky pager for one of his

    18       workers in Virginia Beach, again, Your Honor, I think this can

    19       properly be characterized as puffery and bragging. There is

    20       no indication that Mr. Smith did anything in Virginia Beach.

    21       There is also no evidence that Mr. Smith ever had any

    22       employees.

    23               Your Honor, the low end of the guidelines I would

    24       submit are severe, are overly harsh based upon the conduct

    25       for which Mr. Smith was convicted and indeed the conduct

15

1  which the government has alleged his involvement. But the
2  Court is bound not to go below the low end of the guidelines,
3  and we submit that certainly a sentence of 25 years or 292
4  months is only eight months short of 300. We submit that a
5  sentence of 25 years, if not excessive, is certainly at the
6  upper limits of what is appropriate for the convictions
7  Mr. Smith was found guilty on.
8       THE COURT: Looking at the Title 18 factors that I
9  think are most appropriate here, and the seriousness of the
10 crimes of course can't be minimized. Promotion and respect
11 for the law. Deterrence and protection of the public. And
12 considering Ms. Skalla's argument in effect that Mr. Smith
13 being a better educated and perhaps more talented person than
14 some of the others here should receive a harsher sentence, I
15 think the argument can be made on the other side of that coin,
16 that the person who is multi-talented but who is incarcerated
17 in ways suffers a harsher punishment it seems to me. I think
18 those things are somewhat of a wash.
19       Looking at it in the light of sentences imposed as
20 to Mr. McGill, Mr. Short, their sentences were 235 months, a
21 little less than 20 years. The low end of the guidelines here
22 is very close to 25 years. I think that that sufficiently
23 recognizes the differences that Ms. Skalla expresses her
24 concerns about. And a sentence of close to 25 years in my
25 view is a very substantial sentence. I think the low end is

15

1   appropriate.

2           It's the judgment of the Court that Mr. Smith be
3   committed to the Bureau of Prisons for a term of 292 months
4   as to count 17; also 292 months as to counts 21, 23, 27, 28
5   and 30, all to run concurrent with the sentence as to count
6   17.

7           Also a term of supervised release of five years is
8   imposed as to count 17, and as to the other five counts all
9   run concurrent.

10          The conditions being the standard conditions that
11  appear on the judgment form.  The condition that Mr. Smith
12  commit no future crimes, federal, state or local, possess no
13  illegal drugs, and pay the $50 assessment which was also
14  imposed as to each of the six counts, a total of $300.

15          Mr. Smith, you do understand you have a right of
16  appeal in this matter?

17          THE DEFENDANT:  Yes.

18          THE COURT:  That right if it is to be exercised has
19  to be exercised within ten days of today's date.  You can
20  discuss the details of that further with Mr. Reynolds.  I am
21  sure he will fill in any blanks with regard to any questions
22  that you may have.  If you are not able to afford what is
23  necessary in terms of transcripts or the record, they will be
24  supplied.

25          MR. REYNOLDS:  If Your Honor please, before the Court

15

    1    recesses, I have prepared a notice of appeal for Mr. Smith and

    2    I am prepared to file it at this time in the Clerk's Office.

    3           Your Honor, we would ask that the Court consider two

    4    requests. We have first a request for the Court to consider

    5    an appeal bond for Mr. Smith and we would file that motion

    6    with the Court and ask that the Court give consideration to

    7    that.

    8           We also have a motion for a request for placement for

    9    Mr. Smith requesting that the Court designate Mr. Smith for

   10    placement in an institution within a radius of 200 miles of

   11    his home in order to allow his family to have access to him.

   12           Can I tender that motion to the courtroom clerk at

   13    this time or file it in the court clerk's office, as the Court

   14    prefers?

   15           THE COURT: You can present it to the clerk right

   16    here and we will consider it filed, both of your motions, if

   17    that's what they are.

   18           MR. REYNOLDS: Yes, Your Honor.

   19           THE COURT: I think they can both be dealt with very

   20    promptly. First, with respect to the request for an appeal

   21    bond, it's very clear to me that this is a matter of such

   22    seriousness and the sentence imposed here is such that a bond

   23    would not be appropriate, notwithstanding the lack of prior

   24    criminal history. The overall history in connection with

   25    this matter and the conviction on the sixth count and the

```
15
16
 1      sentence that is being imposed constrains the Court to deny

 2      the request for an appeal bond.

 3              With respect to placement within 200 miles, all I can

 4      do is to recommend to the Bureau of Prisons that they make

 5      such a placement.  I don't have the authority to dictate that

 6      but I will make that recommendation to the Bureau of Prisons

 7      that he be so placed so that there will be some kind of

 8      reasonable access to the family.

 9              MR. REYNOLDS:  Thank you, Your Honor.

10              THE COURT:  Anything further from counsel?

11              MS. SKALLA:  No, Your Honor.

12              (At 4:30 p.m., the sentencing hearing concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```