IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| NORMAN BROWN | * | Crim. No. WMN-90-454 |
| MELVIN FORD | | |
| JEFFREY REID | * | |
| MICHAEL SMITH | | |
| WALTER SMITH | * | |
| PAUL WINESTOCK | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

### REPLY TO THE GOVERNMENT'S RESPONSE TO
### DEFENDANTS'S MOTION FOR REDUCTION OF SENTENCE

Defendants, through counsel, submit this reply to the government's response to their motion for a reduction of sentence under 18 U.S.C. § 3582(c).

### Introduction

By ignoring the plain language of 18 U.S.C. § 3582 and how the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), made all the guidelines, including U.S.S.G. § 1B1.0 advisory, the government seeks to keep these defendants incarcerated well beyond any period that could be considered reasonably necessary to accomplish the goals of sentencing set forth in 18 U.S.C. § 3553(a). This Court should reject the government's attempt to thwart a just and equitable sentencing result. The relief that these defendants seek is available under the plain language of section 3582 and a post-*Booker* interpretation of the statute.

In considering the questions raised in this case, it is helpful to break section 3582(c)(2) down into its three distinct provisions. The first provision allows a court to reduce a sentence so long as the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has

subsequently been lowered by the Sentencing Commission." This language is the gate-keeping provision of section 3582(c)(2). If a defendant falls within this provision, then the gate opens for a court to exercise its discretion to reduce the sentence. The second provision requires that a court consider the factors in section 3553(a) when exercising its discretion to reduce the sentence.

The third provision states that any sentence reduction "must be consistent with applicable policy statements issued by the Sentencing Commission." Before *Booker*, this provision severely limited a court's discretion to reduce a sentence. After *Booker*, however, this last provision need not limit a court's discretion. The Ninth Circuit and several other district courts have held that this provision must be read as referring to "advisory policy statements," meaning that a court should look to U.S.S.G. § 1B1.10, but is not bound to follow it. *United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007) (*Booker* rendered guidelines advisory in section 3582 proceedings; noting that *Booker* itself expressly rejected the idea that guidelines could be advisory in some contexts, but not others). *Accord United States v. Shelby*, 2008 WL 2622828 (N.D. Ill. June 30, 2008) (following *Hicks*); *United States v. Barrett*, 2008 WL 938926 (M.D. Fla. 2008); *United States v. Stokes*, 2008 WL 938919 (M.D. Fla. 2008); *United States v. Ragland*, 2008 WL 2938662 (D.D.C. 2008); *United States v. Forty Estrema*, 498 F. Supp. 2d 468 (D.P.R. 2007); *United States v. Jones*, 2007 WL 2703122 (D. Kan. 2007); *see also United States v. Taylor*, 520 F.3d 746 (7th Cir. 2008) (noting, but not deciding that § 1B1.10 "[l]ike the rest of the guidelines, [ ] may be merely advisory, in which event a sentence lower than the one prescribed by section 1B1.10(b)(2)(A) may be "consistent with applicable policy statements issued by the Sentencing Commission," as required by 18 U.S.C. § 3582(c)(2), the statute granting district courts authority to reopen a sentence that has become final.").

With this general framework in mind, this Court need only resolve two issues in favor of the

defendants in order to reduce their sentences: 1) whether the defendants were sentenced to a term of imprisonment "based upon a sentencing range that has subsequently been lowered;" and 2) whether the limits set forth in U.S.S.G. § 1B1.10 are advisory. If the answer to these questions is "yes," then section 3582 gives the Court authority to lower the sentences of these defendants and the Court is not bound by the Commission's attempt to exclude certain defendants from the reach of section 3582, as it has done in U.S.S.G. § 1B1.10(a)(2). The Court is also free to consider all the 3553(a) factors in fashioning an appropriate sentence. If *Booker* applies to section 1B1.10, like the Supreme Court said it should apply to all the guidelines, this Court also is not bound by any prior precedent that relied on section 1B1.10 to limit a court's ability to correct *Apprendi* error in application of a mandatory minimum or consider any other factor under section 3553(a).

**I.     This Court Has Discretion to Reduce the Sentence of Each Defendant under 18 U.S.C. § 3582(c).**

Under 18 U.S.C. § 3582(c), as long as the term of imprisonment for each defendant was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o) [*i.e.,* made retroactive)," the Court has the discretion to reduce a sentence. Why each defendant meets this "gate-keeping" requirement of section 3582 was addressed in our opening memo and will not be repeated here. A few points responsive to the government are, however, worth noting.

First, in arguing that the Court may not reduce the sentences of the defendants in this case, the government chiefly relies on the policy statement in U.S.S.G. § 1B1.10, which seeks to prohibit sentence reductions in cases where the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10 (a)(2)(B). Government Response at 7.

In relying on U.S.S.G. § 1B1.10(a)(2)(B), and case law[1] construing it, the government makes a fatal mistake. The Commission in section 1B1.10(a)(2)(B) does not purport to interpret the first provision of section 3582. Rather, section 1B1.10(a)(2)(B) relies on the third provision of section 3582, *i.e.,* that the reduction be "consistent with applicable policy statements issued by the Sentencing Commission."

That the Commission even found it necessary to adopt a policy statement seeking to exclude sentence reductions in cases where the amendment "does not have the effect of lowering the defendant's applicable guideline range," shows that the "based on" language of section 3582 should not be interpreted as narrowly as the government claims. In other words, if the government is correct, and the statutory language "based on a sentencing range that has subsequently been lowered" means that an amendment must have the "effect of lowering the defendant's guideline range," then there would have been no need for the Commission to set forth the exclusion in section 1B1.10(2)(B). Hence, section 1B1.10(a)(2)(B) engrafts an additional limitation on sentence reductions beyond what section 3582's "based on" language envisions.

Because section 1B1.10(a)(2)(B) seeks to place limits on a court's authority to grant relief

---

[1] Many of the cases the government cites at pages 7 to 8 of its response are of little value here because they rely on a previous version of U.S.S.G. § 1B1.10, which was plainly mandatory before *Booker*. Those cases do not purport to interpret the "based on" language of section 3582(c)(2). With rare exception, the post-March 3, 2008 crack cases cited by the government assume that a sentence reduction under section 3582 must be consistent with the Commission's policy statement in section 1B1.10, including section 1B1.10(a)(2)(B)'s requirement that the amendment have the effect of lowering the applicable guideline range. *See* cases cited at p. 10 of the Government's Response. These cases fail to analyze the statutory language of 3582 and most do not address whether the reference to policy statements in 3582 now must be read as "advisory policy" statements under *Booker*. To the extent that any, *see United States v. Hubbard*, 2008 WL 977344 (M.D. Fla 2008), find section 1B1.10 mandatory even in light of *Booker*, they are wrongly decided for the reasons stated in our opening memorandum and herein.

beyond that set out in section 3582(c)(2), the question comes back to whether *Booker* made section 1B1.10 advisory. If so, then this Court is not bound by the exclusion in section 1B1.10(a)(2)(B). *See* Defendants's Opening Memorandum and discussion, *infra*.

Second, of all the cases cited by the government[2] in support of its argument that the Court may not revisit these sentences, only four actually construe the statute rather than rely on U.S.S.G. § 1B1.10. Three of the four contain little or no analysis. *See United States v. Wright*, 2008 WL 2265272 (E.D. Pa. 2008) (court merely repeated language of statute without parsing its meaning); *United States v. Harris*, 2008 WL 1342995 (E.D. Pa. 2008) (same); *United States v. Mitchell*, 2008 WL 2489930 (W.D. Wash. 2008) (same). The fourth case, *United States v. Biami,* 548 F.Supp.2d 661 (E.D. Wis. 2008), attempts to construe the term "based on" in section 3582, but does not consider the manner in which guideline sentences are calculated under U.S.S.G. § 1B1.1. It also assumes that a court would be bound by the guidelines in determining the new sentence. According to the *Biama* Court,

> it would make little sense to permit the court to re-open a sentence based on a guideline amendment that would not, if applied to the defendant, make any difference in the outcome. The better reading of the statute is that the amendment must lower the range under which the defendant was actually sentenced (and would be re-

---

2  With string cite upon string cite, the government seeks to convey the impression that a ruling in favor of the defendants in this case would run contrary to numerous decisions from other courts. A close look at those decisions shows that the weight of authority is not as strong as the government claims. In one of the cases, *United States v. Stevens*, 2008 WL 2330225 (D.S.C. June 3, 2008) (cited at p. 10 of the Government's Response), the district court assumed that the guidelines in a 3582 proceeding were advisory, and denied to exercise its discretion to grant relief only after recalculating the guidelines and considering the section 3553(a) factors. At no point in the decision did the court state, as the government suggests here, that it had no authority to reduce the defendant's sentence. *See also United States v. Bruce*, 2008 WL 678643 (W.D.Va. 2008) (court concludes it "will not" reduce sentence, not that it lacked authority to reduce sentence) (cited at p. 10 of Government's Response).

sentenced).

2008 WL 1869108 *2.

In reaching this conclusion, the court cites to pre-*Booker* case law construing section 3582. Only by ignoring *Booker's* affect on section 3582, and the now advisory nature of the guidelines, could the court conclude that certain retroactive guideline amendments would not "make any difference in the outcome." When considered in light of *Booker*, and the 3553(a) factors, a lowering of a guideline range, even if it does not lower the final guideline calculation, could nonetheless affect a court's ultimate sentencing decision. Under *Booker*, a court could give the final guideline range little weight, particularly in a case like this one where the crack guidelines, even as amended, are not based on empirical evidence or past practice, but grew out of an artificial mandatory minimum sentencing scheme. *Kimbrough v. United States*, 128 S.Ct. 558 (2007) (court may impose a non-guideline sentence as a result of unwarranted disparity between crack and cocaine powder).

In summary, the government's argument that this Court has no authority to reduce the sentences of these defendants rests on the Sentencing Commission's view that certain defendants should be excluded from obtaining relief, not on any meaningful interpretation of section 3582.

### II. The Existence of a Statutory Mandatory Minimum or Increased Maximum Penalty at the Time of the Original Sentencing Does not Deprive this Court of Discretion to Reduce that Sentence.

Contrary to the government's claim, the passage of a retroactive guideline amendment is not "irrelevant" in cases involving a statutory mandatory minimum sentence or an enhancement that increased the statutory maximum penalty. Government Response at 11. Even in the context of mandatory minimum sentencing provisions, the guidelines, and in drug cases, U.S.S.G. § 2D1.1, provide a basis for a court's sentencing decision. Section 1B1.1 of the guidelines (Application

6

Instructions) specifies that a court look to, *inter alia*, Chapter Two guidelines in calculating the sentence. A statutory minimum sentence comes into play only in step eight (section h) of the nine step process set forth in section 1B1.1. In step eight, a court looks to Part G of Chapter 5, which makes the statutory required minimum sentence the guideline sentence in cases where the guidelines otherwise call for a lesser sentence. *See* U.S.S.G. § 5G1.1(b). Hence, the guidelines, and retroactive changes to them, remain relevant in cases involving statutory mandatory minimum sentences.

The cases cited by the government do not hold otherwise. They stand for the unremarkable proposition that a court may not go below an *otherwise lawful mandatory* minimum sentence when considering a sentence reduction under section 3582(c)(2). For example, in *United States v. Dimeo*, 28 F.3d 240 (1st Cir. 1994), the defendant originally received a 63 month sentence, which trumped the mandatory minimum of 60 months. The court, acting pursuant to section 3582, reduced the sentence to 60 months following a change in the guidelines for LSD. On appeal, the First Circuit merely observed that the court could not reduce the sentence below the mandatory minimum of 60 months. The court, like others cited by the government at pages 11 to 12 if its response, did not address whether the district judge could have reduced the sentence below the mandatory minimum upon finding an *Apprendi* violation or other legal flaw in the mandatory minimum. Here, in contrast, the sentences are unquestionably unlawful under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because drug amounts that resulted in increased penalties - life in the case of Mr. Brown - were neither pled in the indictment nor proven to the jury beyond a reasonable doubt. The Eighth Circuit's decision in *United States v. Mihm*, 134 F.3d 1353 (8th Cir. 1998), provides an apt analogy that explains why the Court may correct the *Apprendi* error in the sentences. In *Mihm*, the court held that in re-sentencing a defendant under section 3582(c)(2), a district court may apply a statutory

provision, 18 U.S.C. § 3553(f), that was not in effect at the original sentencing. The court explained:

> When a defendant is eligible for a § 3582(c)(2) reduction, the district court must consider all relevant statutory sentencing factors. That was the basis for our decision in *United States v. Williams*, 103 F.3d 57, 58 (8th Cir.1996) (*per curiam*), where we held that the government may elect to move for a downward departure under 18 U.S.C. § 3553(e) at the time of a § 3582(c)(2) resentencing, even though it did not make such a motion at the time of original sentencing. Like § 3553(e), the § 3553(f) safety valve is a general sentencing consideration that the district court must take into account in exercising its present discretion to resentence under § 3582(c)(2). Read together, *Wyatt* and *Williams* clarify that the grant of § 3582(c)(2) relief to *Mihm* is a distinct sentencing exercise, one that results in a sentence "imposed on or after" September 23, 1994. Thus, there is no retroactivity bar to applying § 3553(f) in these circumstances. *Accord United States v. Reynolds*, 111 F.3d 132 (Table), 1997 WL 152032 (6th Cir.1997), *citing United States v. Clark*, 110 F.3d 15, 18 (6th Cir.1997); *cf. United States v. Polanco*, 53 F.3d 893, 898-99 (8th Cir.1995), *cert. denied*, 518 U.S. 1021, 116 S.Ct. 2555, 135 L.Ed.2d 1073 (1996), applying § 3553(f) to a sentence imposed after appellate remand even though the original sentence preceded the statute's effective date.

*But see United States v. Mullanix*, 99 F.3d 323 (9th Cir. 1996); *United States v. Smartt*, 129 F.3d 539 (10th Cir. 1997).

Similarly, nothing prevents this Court from applying *Apprendi* in a section 3582 proceeding where a retroactive change in the guidelines already has given the Court the authority to revisit the sentence.[3] Once a court has the authority to entertain the merits of a reduction under section 3582

---

3 The government appears to misconstrue the *Apprendi* argument presented here. Mr. Brown, and the other defendants affected by the *Apprendi* error, does not argue that *Apprendi* provides an independent basis for relief under section 3582. Nor do any of the defendants argue that *Booker* supplies an independent basis for section 3582 relief. Hence, defendants take no issues with the numerous cases cited on page 16 of the government's response. Their argument is that once the court has an independent basis to revisit a sentence (here, because of a retroactive change in the guidelines), the Court, in deciding whether, and to what extent to reduce the sentence, must consider all of the section 3553(a) factors, including the current law governing statutory mandatory minimum penalties and *Booker's* affect on the mandatory nature of the

(because the defendant has met the threshhold "based on" requirement), the court must consider all the 3553(a) factors, including "the kinds of sentences available." 18 U.S.C. § 3553(a)(3). Like section 3553(f), *Apprendi's* limits on the reach of statutory mandatory minimum sentences is a valid section 3553(a) factor that the court must consider in exercising its discretion to reduce a sentence.[4]

The Ninth Circuit's decision in *Hicks* provides additional support for our position that this Court may consider *Apprendi's* affect on the availability of a statutory mandatory minimum sentence or enhanced sentence. The court in *Hicks* initially noted that "[w]hile § 3582(c)(2) proceedings do not constitute full resentencings, their purpose is to give defendants a new sentence." *Id.* at 1171 (emphasis in original). The court then went on to hold that the Supreme Court's intervening decision in *Booker*, 543 U.S. 220, applied to the determination of this new sentence. The court concluded as follows: "*Booker* was not a mere statutory change which can be set aside to allow us to pretend it is 1993 for the purpose of modifying Hicks' sentence; rather, it provides a constitutional standard which courts may not ignore by treating Guidelines ranges as mandatory in any context." *Hicks*, 472 F.3d at 1173.

Similarly, *Apprendi* and its progeny are not a mere statutory change; they, like *Booker*, provide a constitutional standard that courts may not ignore. *Apprendi*, like *Booker*, did not change

---

guidelines.

   4 Defendants acknowledge that when the guidelines were mandatory, the Commission, through U.S.S.G. § 1B1.10, could limit the nature of the 3553(a) factors that a court could consider in resentencing a defendant under section 3582. Cases like *United States v. McBride,* 283 F.3d 612 (3d Cir. 2002), which interpret the former section 1B1.10 as prohibiting a court from considering *Apprendi's* affect on mandatory minimums, may have been decided quite differently had the court been free of the 1B1.10 constraints. Now that section 1B1.0 is advisory, nothing in section 3582 prohibits this Court from considering *Apprendi's* affects on mandatory minimum sentences as a relevant factor under section 3553(a).

the Constitution, but simply clarified what the Constitution required. To hold that the unknowing constitutional error, which was made in this case in 1993, must be ignored even though the Court has the legal authority to revisit the sentence, would unnecessarily perpetuate a fundamental constitutional violation. *United States v. Ragland*, 2008 WL 2938662.

    **III.**    **Defendants do not seek to Relitigate Other Guideline Application Decisions**.

The government unnecessarily confuses matters by suggesting that defendants seek to relitigate other guideline application decisions. Government Response at 12-13. They do not. All defendants seek here is a proper application of 18 U.S.C. § 3582(c)(2), in light of existing Supreme Court pronouncements, including *Booker* and *Apprendi*. Inasmuch as the Court never had an opportunity to consider a "variance" from the guidelines under *Booker*, and never had the benefit of *Apprendi*, the relief sought here can hardly be characterized as a "do-over" or relitigation of issues already decided.

    **IV.**    **The Court May Vary From the Guidelines Under *Booker* When Granting a Motion for Reduction of Sentence under 18 U.S.C. § 3582(c)(2).**

Much of Defendants's opening memorandum sets forth in detail why *Booker* applies to section 3582 proceedings and why the Court is not bound by the guidelines, including the limitations set forth in U.S.S. G. § 1B1.10. Those arguments refute the government's contrary contention. Government Response at 17-18. While those arguments will not be repeated here, a few points should be emphasized in response to the government's criticism of the Ninth Circuit's decision in *Hicks*. First, since our opening memorandum was filed, more courts have found Hicks persuasive, including the Honorable Paul Friedman in *United States v. Ragland*, 2008 WL 2938662. *See also United States v. Shelby* 2008 WL 2622828 (N.D. Ill. 2008) and cases cited in *Ragland,* n. 6. Second,

10

that a section 3582 proceeding to reduce a sentence may raise no Sixth Amendment implications does not mean that U.S.S.G. § 1B1.10 and the guidelines survive *Booker*. The Supreme Court made abundantly clear in *Booker* and its later decision, *Kimbrough v. United States*, 128 S.Ct. 448, 564 (2007) that "all" Guidelines "are advisory only," even guidelines that do not offend the Sixth Amendment. The *Booker* Court expressly rejected the government's argument that the guidelines might remain advisory in certain contexts but not others. *Booker*, 543 U.S. at 266.

Third, applying *Booker* to the guidelines in the context of a motion to reduce sentence under section 3582(c)(2) does not expand its purpose of providing a mechanism to reduce a sentence to account for a retroactive guideline amendment. A retroactive active guideline amendment still remains the condition precedent for a court to revisit a sentence under section 3582. All *Booker* does is give a court full authority to consider the section 3553(a) factors in deciding whether, and to what extent, to reduce a sentence once that condition precedent has been met. Because section 3582 requires that a court consider the "factors set forth in section 3553(a) to the extent that they are applicable," all *Booker* does is take away the Sentencing Commission's ability to *mandate* which factors are applicable.

Here, a fair and reasoned look at the section 3553(a) factors shows that each of these defendants has served longer than is necessary to accomplish the purposes of sentencing. Indeed, the government does not even attempt to offer any argument on why the 3553(a) factors justify keeping these defendants behind bars.[5] When these defendants originally appeared before this Court

---

5 At the end of the day, all the government can muster is the tired refrain that granting relief to these defendants will create "unwarranted sentencing disparity" and "result in undue demands on judicial resources." Government Response at 21. As to the specter of disparity, it is a strange argument in the face of overwhelming evidence about how the crack laws have disproportionately impacted an entire generation of young black men - many of whom remain

for sentencing, the sentences imposed were mandated by the Guidelines and the existing law on statutory mandatory minimum sentences. The transcripts of the sentencings clearly reflect the Court's disagreement with the life sentence for Mr. Brown, as well as the harsh sentences imposed on the other defendants. Now that the guidelines are advisory, and *Apprendi* removes the mandatory life sentence for Mr. Brown, section 3582 provides the Court with the mechanism to correct the injustice of the past.

To be sure, the defendants in these cases committed serious crimes. But they already have served lengthy periods of incarceration. Each has matured in prison, found life skills, and committed to a life free of crime. Time-served sentences would give each man the chance to "salvage the rest of his life as a free man," *Shelby*, slip op. at 12, and return to family and friends. "While nobody other than [the defendants] can guarantee [their] future as [] productive, law-abiding citizen[s], any humane system of crime and punishment should afford - at least for non-capital cases - the opportunity for rehabilitation and redemption if the sentencing considerations of 18 U.S.C. § 3553 are to be honored and satisfied." *Shelby*, 2008 WL 2622828 *5.

## Conclusion

For the reasons stated here and in our previous submissions, defendants respectfully request that this Honorable Court find that it has the legal authority to reduce their sentences and exercise its discretion to reduce those sentences to time-served.

---

behind bars because of ill-conceived and misguided mandatory minimum legislation. Moreover, disparity is unavoidable, especially since district judges in the Ninth Circuit may reduce sentences under section 3582 after giving full consideration to the 3553(a) factors. As to the claim that applying *Booker* to section 3582 proceedings will place "undue demands on judicial resources," those demands already exist. Indeed, the protracted litigation in this case has placed a greater demand on judicial resources than if the Court had simply resentenced these defendants after considering all the 3553(a) factors.

Respectfully submitted,

/S/

_____
Denise C. Barrett     #06734
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Suite 1100, Tower II
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-0872
Email: denise_barrett@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of August 2008, I electronically filed this Reply to the Government's Response Defendant's Motion for Reduction of Sentence with the Clerk of Court using the CM/ECF system which will send notice of such filing to the following registered CM/ECF user: Barbara S. Skalla, Assistant United States Attorney, Office of the United States Attorney, 6500 Cherrywood Lane, 4th Floor, Greenbelt, Maryland 20770. I further certify that on the same date, I mailed the foregoing document by inter-office mail to: Estelle Santana, USPO, 250 West Pratt Street, Suite 400, Baltimore, Maryland 21201.

/S/

_____
Denise C. Barrett     #06734
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Suite 1100, Tower II
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-0872
Email: denise_barrett@fd.org